# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DALE EGGLESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 5208 |
| v. | ) | |
| | ) | **Magistrate Judge** |
| CAROLYN W. COLVIN, | ) | **Maria Valdez** |
| acting commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dale Eggleston ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 18], and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 23].

## BACKGROUND

## I.    PROCEDURAL AND FACTUAL HISTORY[1]

Since at least 2009, Plaintiff has suffered from a variety of mental and physical impairments, such as anxiety, paranoia, cocaine abuse, and a fractured ankle. He thus filed a Title XVI application for SSI benefits, alleging a disability onset date of August 8, 2009. His application was denied initially and upon reconsideration. Accordingly, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Plaintiff was not disabled at Step Five of the Social Security Administration's sequential analysis.

In her opinion, the ALJ found that Plaintiff suffered from the following severe impairments: status/post facture of the left lower extremity, headaches, obesity, depression, and anxiety with a history of cocaine/polysubstance abuse. After determining that he did not meet any listed impairment, the ALJ then calculated Plaintiff's Residual Functional Capacity ("RFC") and found that he could perform light work with the following exceptions: he must avoid concentrated exposure to noisy environments at the level of jackhammers; he should be limited to two-to-three step simple, repeated, routine tasks; and he should avoid contact with the public and come into only occasional contact with co-workers and supervisors.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform his past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ determined

---

[1] The following facts from the parties' submissions are undisputed unless otherwise noted.

that Plaintiff could work as a bench assembler, and thus concluded that he was not disabled under the Social Security Act.

## STANDARD OF REVIEW

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

In reviewing an ALJ's decision, a court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting: (1) the ALJ improperly evaluated the opinions of his treating physicians and the state agency physicians; (2) the ALJ improperly discredited his allegations of disabling mental impairments; and (3) the ALJ erroneously relied on the VE's testimony. The Court will address each issue in turn.

## I.    **The ALJ's Analysis of the Medical Opinions**

Plaintiff first argues that the ALJ violated the treating physician rule, which requires ALJs to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. If the ALJ declines to do so, then he must offer "good reasons for discounting the opinion" and assign it some weight in light of the following regulatory factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); 20 C.F.R. § 404.1527. In that respect, Plaintiff asserts that the ALJ erred by failing to specify precisely how much weight she accorded to the opinions of Dr. Sarpy (Plaintiff's treating psychiatrist) and Ms. Smith (Plaintiff's case worker), both of whom opined that Plaintiff is seriously limited in his ability to concentrate and complete tasks. Similarly, Plaintiff further claims that the ALJ's reasons for

discounting their opinions are unsupported by the record. Neither argument succeeds.

While Plaintiff correctly notes that ALJs are required to indicate how much weight they give a particular physician's opinion, which the ALJ did not make abundantly clear in this case, a common-sense reading[2] of the ALJ's opinion supplies the necessary clarity. The ALJ accorded Dr. Sarpy's and Ms. Smith's opinions neither controlling weight nor no weight. It follows that their opinions were accorded *some* weight. And given that the ALJ articulated valid reasons for discounting those opinions and properly analyzed the 20 C.F.R. § 404.1527(d) factors, as discussed below, Plaintiff's contentions are nothing more than a *perceived* articulation error.

This becomes especially clear in light of the ALJ reasons for discounting Dr. Sarpy's and Ms. Smith's opinions. Ms. Smith is not a physician; she is a caseworker who, by her own testimony, merely assists Plaintiff with paperwork and connecting him with doctors. Her opinion on Plaintiff's mental capacity is therefore of limited value. *See* 20 C.F.R. § 404.1527. With respect to Dr. Sarpy, the ALJ explained that she had only seen Plaintiff twice, and that most of her observations regarding Plaintiff's mental health were either unremarkable or inconsistent with the record.[3] The only portions of her opinion that indicate more serious issues appear to be

---

[2] *See generally Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (explaining that courts apply "common sense" reading to ALJ opinions rather than scrutinizing them for minor errors or inconsistencies).

[3] For example, in an August 2010 report, Dr. Sarpy noted that Plaintiff exhibited coherent speech, logical thought process, good memory, and concrete abstract thinking. (*See* R. 468.)

largely derived from Plaintiff's subjective reports, not objective medical findings. Worse still, those portions indicating more severe issues, such as repeated episodes of decompensation and difficultly concentrating/socializing, are either unsupported by the record[4] or eclipsed by Plaintiff's stated ability perform tasks like food shopping and handling personal finances. Consequently, the ALJ ultimately found that the factors of supportability[5] and consistency[6] warranted assigning less-than controlling weight to Dr. Sarpy's opinion. The Court finds no error in this analysis, much less reversible error. *See* 20 C.F.R. § 404.1527.

In addition to his treating sources, Plaintiff also argues that the ALJ improperly assessed the opinions of the state agency physicians, but this challenge is easily dismissed. The brunt of Plaintiff's argument is that because no treating source or physician came to the *exact* conclusion as the ALJ regarding Plaintiff's RFC, it follows that the ALJ impermissibly substituted her own judgment for that of the medical professionals.[7] Plaintiff, however, misunderstands the pertinent regulations and the nature of the RFC calculation. It is of no consequence that the

---

[4] In her Mental Disorders Report, for example, Dr. Sarpy noted that Plaintiff suffered from repeated episodes of decompensation, but there is evidence of only one (perhaps two) of such instances in the record.

[5] *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

[6] *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.")

[7] Plaintiff further claims the ALJ erred by failing to articulate the precise weight given to each state physician's opinion, but this argument is unavailing for the reasons discussed above.

ALJ's ultimate RFC calculation differed slightly than the physicians on record because the ultimate responsibility for weighing the evidence and calculating a claimant's RFC lies with the ALJ — not a particular doctor. *See* 20 C.F.R. § 404.1527(e)(1)-(2).

Of course, as Plaintiff rightly notes, ALJs may not simply substitute their judgment for that of a physician, *see Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), but that is not the case here. The ALJ detailed the opinions of two reviewing physicians and two consultative examiners, each of whom found Plaintiff to be less functionally limited than the ALJ did.[8] And although she did not explain precisely how each state-agency opinion figured into her ultimate conclusion, her chain of reasoning is fairly obvious. Given that (1) the state agency opinions conflicted with Plaintiff's own account of his impairments, as well as the opinion of his treating physician, and (2) the ALJ ultimately found Plaintiff to be more limited than the state agency physicians opined, then one can infer that (3) the ALJ tempered the state agency physicians' opinions with *some* of the weight she gave to Plaintiff's testimony and treating physician, and then arrived at a reasoned conclusion based on the conflicting evidence. Perhaps she could have been clearer in explicating the relative weight given to each physician's opinion, but there is little sense in which the ALJ substituted her judgement for that of a doctor. Accordingly, the Court affirms the ALJ's decision in this regard.

---

[8] This also entails that any error in analyzing the state physicians' opinions, if it exists, would be harmless, since even if the ALJ had adopted their opinions in full, it would not have resulted in a more-favorable decision for Plaintiff.

## II.    The ALJ's Credibility Determination

To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). To that end, Plaintiff claims the ALJ "cherry picked" the evidence and improperly equated his ability to perform daily activities with an ability to sustain competitive employment. The Court, however, is unpersuaded.

As the ALJ explained, Plaintiff's claims of debilitating paranoia, anxiety, and fear are undercut by his ability to leave the house regularly, walk his mother to work, go to counseling and rehab meetings, and shop for food. Moreover, the ALJ observed that Plaintiff was generally coherent at the hearing. *See* SSR 96-7p ("In instances where the individual attends an administrative [hearing] . . . the [ALJ] may also consider his or her own recorded observation of the individual as part of the [evaluation]."). None of these reasons are patently wrong, nor do they conflate the performance of daily activities with the ability to sustain competitive employment. They merely call into question the severity and pervasiveness of Plaintiff's alleged impairments.

In terms of "cherry picking," it is telling Plaintiff has not cited any particular record to support his argument. The Court is thus left to wonder exactly what

evidence the ALJ allegedly ignored. Perhaps Plaintiff believes the two episodes of decompensation he experienced support further restrictions in his RFC. But the ALJ noted that those episodes were nonrecurring, and further explained that Plaintiff improved afterwards. The remainder of the medical evidence is simply ambivalent: some records indicate, for example, moderate difficulties in concentration persistence and pace (although many of those records are based solely on Plaintiff's subjective reports), whereas other records indicate logical thought process and clarity. The ALJ didn't ignore this evidence; he just found that some of it detracted from Plaintiff's credibility, which is hardly cherry picking.

## III.   The ALJ's Reliance on the VE Testimony

Lastly, Plaintiff challenges the ALJ's reliance on the VE's testimony. At the hearing, the VE testified that a person with Plaintiff's RFC could perform at least three jobs: hand packager, bench assembler, and inspector. The ALJ verified that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"), but Plaintiff now argues that this is not the case. Specifically, Plaintiff maintains that the ALJ did not provide DOT codes for the above jobs, and that any potential matching jobs require a Specific Vocational Preparation ("SVP")[9] level of two, which is beyond Plaintiff's capabilities (as reflected in his RFC). Neither argument is availing.

---

[9] "SVP" is defined in Appendix C of the DOT as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. This training may be acquired in a school, work, military, institutional, or vocational environment. *See* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

First, Plaintiff's contention that the ALJ and VE did not provide DOT codes is so obviously false that it pains the Court to clarify this point. True, the ALJ did not include the DOT codes in her opinion, but the transcript clearly reflects a job-by-job analysis along with DOT codes at the hearing. The ALJ then incorporated that analysis into her opinion by saying that "the vocational expert testified that given all of these factors [Plaintiff] would be able to perform [the following jobs:] hand packager, 20,00 jobs available, bench assembler, 14,000 jobs available, and inspector, 4000 jobs available." (R. at 25.) Plaintiff's "contention" that the ALJ erred by failing to provide DOT codes is thus too clever by half.[10]

Plaintiff's second argument carries more weight, but fails upon closer analysis. Take the bench assembler job as an example. The DOT provides that a bench assembler is a light-exertional, unskilled job with an SVP of two. As Plaintiff correctly notes, an SVP level of two requires a person to carry out detailed instructions, which seems inconsistent with the ALJ's RFC restriction of simple, routine, two-to-three step tasks. The DOT and Social Security regulations, however, use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties. *See McCain v. Covin*, No. 12 C 9652, 2013 WL 628638, at *7 (N.D. Ill. Dec. 4, 2013) (citation omitted). "Thus, no one-to-one

---

[10] Plaintiff also disputes the particular DOT codes relied on by the VE, the ALJ, and even the Commissioner in her brief, claiming that "those jobs cannot be the ones . . . relied upon. The 'bench assembler' job, DOT 792.667-010, cannot be found with a cursory search of the DOT." (Pl.'s Rep. Br. at 6.) Apart from undercutting his previous argument that the ALJ did not provide any DOT codes, this challenge is perhaps even more baseless than the first: the Court found the bench assembler job in the DOT with a less-than rudimentary search — it's DOT 706.684-022, and the VE cited this exact code when he first mentioned the job at the hearing. Although the VE later (incorrectly) referred to the bench assembler job as DOT 792.667-010, which doesn't exist, this error is hardly worthy of discussion.

parallel can be found between 'simple' as it used under the regulations and the *DOT* 's requirements; a task may be 'simple' under the regulations and still involve the kind of 'detailed' tasks required under Level 2 reasoning." *Thompkins v. Astrue,* No. 09 C 1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010).

As such, courts have held that a SVP Level 2 is "not inconsistent with a claimant's limitations to simple, routine tasks." *Id.*; *see also Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005) (finding that Level 2 reasoning is consistent with an RFC of simple, routine tasks); *Money v. Barnahrt,* 91 Fed. Appx. 210, 214 (3d Cir.2004) ("Working at reasoning Level 2 would not contradict the mandate that her work be simple, routine and repetitive"); *Flaherty v. Halter,* 182 F.Supp.2d 824, 850 (D. Minn. 2001) (ALJ's finding of limitation to simple, routine, repetitive, concrete, tangible tasks did not conflict with the DOT's Level 2 reasoning requirement). The Court thus finds no error in the ALJ's reliance on the VE's testimony or DOT references, and therefore affirms the ALJ's decision in its entirety.

## **CONCLUSION**

For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 18], and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 23].

**SO ORDERED.**                          **ENTERED:**

**DATE:**    **May 7, 2015**          _____
                                         **HON. MARIA VALDEZ**
                                         **United States Magistrate Judge**